RECEIVED
USDC, WESTERN DISTRICT OF LA.
TONY R. MOORE, CLERK
DATE 5/11/09
BY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| DARRELL W. RANEL | CIVIL ACTION NO. 08-0149 |
| VERSUS | JUDGE ROBERT G. JAMES |
| GILLEY ENTERPRISES-LOUISIANA PARTNERSHIP, ET AL. | MAG. JUDGE KAREN L. HAYES |

RULING

This is an employment discrimination case brought by Plaintiff Darrel W. Ranel ("Ranel") against his former employer, Defendant Gilley Enterprises-Louisiana Partnership d/b/a McDonald's, Gilley Enterprises, Inc., and Golden Arch, Inc. (collectively referred to as "Gilley"). Pending before the Court is a Motion for Summary Judgment [Doc. No. 32] filed by Gilley.

For the following reasons, Gilley's Motion for Summary Judgment is GRANTED.

I.   FACTUAL AND PROCEDURAL BACKGROUND

Gilley owns and operates the McDonald's restaurant located in Rayville, Louisiana. Charlotte Woods Johnson ("Johnson") is the store manager of the Rayville McDonald's. Johnson hired Ranel as a swing or swift manager. Darren Thomas ("Thomas") is the district manager and Johnson's immediate supervisor.

On unspecified dates, Ranel contends that he witnessed or was made aware of several incidents of sexual harassment between co-workers at the Rayville McDonald's. He reported these incidents to Johnson.

On April 11, 2007, Rhonda Robinson ("Robinson"), a cashier, walked up to Ranel, put her

1

stomach against his, and grabbed his groin. Ranel reported what happened to Antoinette McGraw, the assistant store manager. Johnson was out of town at the time, and Ranel did not have any contact information for Thomas.

On April 12, 2007, Dawana McFarland ("McFarland"), a cashier, came into Ranel's office and said, "Mr. Darrell[,] I want to eat you." Shortly thereafter, McFarland walked up to Ranel, rubbed his penis, and then walked away. Ranel, who is also a preacher, then went alone to the storeroom and prayed.

Robinson and McFarland continued to work during Ranel's shift following these incidents.

Ranel drafted a written complaint and gave it to Thomas when he saw him a few days later. Ranel requested that his complaint be investigated.

A few days after that, Ranel left a note for Johnson and Thomas requesting a leave of absence.

At some point, Johnson and Thomas discussed Ranel's complaint and suspended Robinson and McFarland, pending an investigation.

During the next two months, Ranel spoke with Johnson and Thomas regarding the status of the investigation and whether he would return to work. Robinson and McFarland were ultimately suspended for a total of four weeks without pay. Ranel contends that neither Johnson nor Thomas contacted him regarding the result of the investigation.

On June 22, 2007, Ranel filed a charge of discrimination with the EEOC, alleging that he was sexually assaulted by Robinson and McFarland. [Doc. No. 45-2, Exh. 26]. He stated on the charge that "I am still on leave of absence waiting on the results of the investigation. Charlotte Johnson called me once to ask me when I was going back to work. . . .It is my understanding that the two

hourly employees were suspended for two weeks and have been returned to work."

Ranel did not return to work.

On February 1, 2008, Ranel filed suit against Gilley. [Doc. No. 1].

On March 13, 2009, Gilley filed a Motion for Summary Judgment [Doc. No. 32].

On April 10, 2009, Ranel filed a memorandum in opposition [Doc. No. 40].

On May 1, 2009, Gilley filed a reply [Doc. No. 45].

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* Unless the moving party meets this burden, the court may not grant the unopposed motion, regardless of whether any response was filed. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 (5th Cir. 1995).

## B. Hostile Work Environment

Ranel asserts that he was subjected to a sexually hostile work environment while he was employed at the Rayville McDonald's. Title VII forbids employers to take actions on the basis of sex that "discriminate against any individual with respect to [his] compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). Sexual harassment is a form of discrimination prohibited under Title VII. *See Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986); *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393 (5th Cir. 2007).

To state a claim for sexual harassment, Ranel must establish that (1) he belongs to a protected class; (2) he was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition or privilege of employment; and (5) Gilley knew or should have known of the harassment and failed to take remedial action. *See Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 655 (5th Cir. 2002); *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 298–99 (5th Cir. 2001); *see also Frank v. Xerox Corp.*, 347 F.3d 130 (5th Cir. 2003).

Gilley contends that Ranel has failed to establish that he was subjected to severe or pervasive harassment sufficient to create a hostile work environment. Gilley also contends that the undisputed evidence shows that it took prompt remedial action as soon as Ranel made his complaint about sexual harassment.

Under a hostile work environment theory of sexual harassment, the plaintiff is not required to show that he suffered a tangible employment action, but that the conduct of the alleged harasser was severe or pervasive enough to alter a term or condition of his employment. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 752 (1998); *see also Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434–35 (5th Cir. 2005) (A plaintiff need only show that conduct was severe or

4

pervasive, not both.). A plaintiff "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." *Frank*, 347 F.3d at 138. Whether an environment is objectively hostile or abusive depends on the totality of the circumstances, including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 21–22. A "recurring point in [Supreme Court] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270–71 (2001) (internal quotes omitted).

Ranel relies on the following instances of harassment:

- on April 11, 2007, Robinson walked up to him, put her stomach against his, and grabbed his groin;

- on April 12, 2007, McFarland stuck her head in his office and said, "Mr. Darrell[,] I want to eat you"; and

- later on April 12, 2007, McFarland walked up to him, rubbed his penis, and then walked away.

Ranel argues that the harassment was severe because it involved the deliberate touching of an intimate body part. *See Worth v. Tyer*, 276 F.3d 249, 268 (7th Cir. 2001) (holding that a one-time, deliberate touching of a woman's breast was actionable); *see also Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 807–08 (7th Cir. 2000) (holding that "[h]aving a co-worker insert his tongue into one's mouth without invitation and having one's brassiere nearly removed" was actionable). Ranel also argues that the conduct was subjectively offensive because Ranel is a preacher. Finally, Ranel

contends that the co-worker standard should be applied to him because he had no authority to investigate complaints of sexual harassment or suspend or terminate employees who violated the harassment policy.

Gilley concedes that the incidents were offensive, but argues that "neither one lasted more than a few seconds and both appear to be nothing more than horseplay." [Doc. No. 32-2, p. 14]. Gilley further argues that the standard for demonstrating severe or pervasive harassment should be heightened because Ranel supervised the alleged harassers and, therefore, had the authority to immediately correct offending behavior and prevent the environment from becoming hostile.

The United States Court of Appeals for the Fifth Circuit has not addressed what standard of harassment should be applied to a supervisor who alleges that he was harassed by his subordinates. The Court need not resolve this issue because the Court finds that Ranel has failed to demonstrate that the harassment was severe or pervasive under the lower co-worker standard.

Turning to whether the conduct at issue was severe, the Fifth Circuit has stated that "'[i]solated incidents, if egregious, can alter the terms and conditions of employment.'" *McKinnis v. Crescent Guardian, Inc.*, 189 Fed. Appx. 307, 310 (5th Cir. 2006) (quoting *Harvill*, 433 F.3d at 436). "Undoubtedly, the deliberate and unwanted touching of [a plaintiff's] intimate body parts can constitute severe sexual harassment." *Harvill*, 433 F.3d at 436 (citing *Worth v. Tyer*, 276 F.3d 249, 268 (7th Cir. 2001) ("Direct contact with an intimate body part constitutes one of the most severe forms of sexual harassment.")). Ranel relies on *McKinnis*, where the Fifth Circuit held that touching the plaintiff on her breast and thigh "on a number of occasions" precluded granting summary judgment for the defendant-employer. *McKinnis*, 189 Fed. Appx. at 310–11. However, the Fifth Circuit has since clarified that *McKinnis* involved "**chronic** unwanted touching." *Gibson v. Potter*,

264 Fed. Appx. 397, 400 (5th Cir. 2008) (emphasis added); *see also Paul v. Northrop Grumman Ship Sys.*, 08-30443, 2009 U.S. App. LEXIS 2230, at *8 (5th Cir. Feb. 5, 2009). In addition, the Fifth Circuit recently reiterated that "isolated incidents involving. . .intimate body touching d[o] not rise to a sufficient level of severity." *Paul*, 2009 U.S. App. LEXIS 2230, at *11, *see also id.* at *8–11 (holding that chest-chest contact, placing a hand on the plaintiff's stomach and running an arm around her waist, and rubbing the pelvic region across her hips and buttocks, for a total of 90 seconds, was not actionable). In this case, the most egregious conduct against Ranel is limited to two touching incidents and a single harassing statement. Ranel complains of no other harassing conduct. The Court, therefore, finds that the harassing conduct in this case is not severe under Fifth Circuit case law.

Although Ranel argues that "the actions of Robinson and/or McFarland were 'severe or pervasive,'" three incidents over a two-day period do not establish pervasive harassment.[1] [Doc. No. 40, p. 21].

Because Ranel has failed to demonstrate that he was subjected to either severe or pervasive harassment, Gilley's Motion for Summary Judgment on this claim is GRANTED.[2]

## C.     Retaliation

Ranel claims that he was constructively discharged in retaliation for complaining of sexual harassment. Title VII prohibits an employer from discriminating against an employee because he

---

[1]Although Ranel mentions in his memorandum a number of harassing incidents between other employees, he does not rely on these incidents to show that the harassment he experienced was pervasive. *See* [Doc. No. 40, p. 21].

[2]In light of the foregoing conclusion, the Court need not reach Gilley's alternative argument that it took prompt and remedial action.

has opposed an employment practice that is unlawful under Title VII or testified in an investigation, proceeding, or hearing under Title VII. *See* 42 U.S.C. § 2000e-3(a). Sexual harassment is a form of discrimination prohibited under Title VII. *See Meritor Savings Bank*, 477 U.S. 57 (1986); *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393 (5th Cir. 2007).

Retaliation claims under Title VII are analyzed under the *McDonnell Douglas* burden-shifting framework. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). To establish a *prima facie* case of unlawful retaliation, Ranel must show: (1) that he engaged in protected activity; (2) that he was subjected to a materially adverse employment action; and (3) that there is a causal connection between the protected activity and the materially adverse employment action. *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).

Gilley moves for summary judgment on the second prong, whether Ranel was subject to a materially adverse employment action. Ranel responds that his constructive discharge constitutes an adverse employment action for purposes of his retaliation claim.[3]

"A constructive discharge does qualify as an adverse employment action." *Thomas v. Atmos Energy Corp.*, 06-30514, 2007 U.S. App. LEXIS 6733, at *15 (5th Cir. March 21, 2007). Because Ranel specifies constructive discharge as satisfying the adverse employment action element of his retaliation claim, he is "required to satisfy the stringent test for constructive discharge." *Id.* at *16

---

[3]Ranel also argues that "if the plaintiff can show 'proximate timing' between the protected activity and the adverse employment action[, t]hen[] there is no *prima facie* show required: the defendant must then show a legitimate, non-discriminatory reason for its action. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999)." [Doc. No. 40, p. 26]. As Gilley points out, this is a misinterpretation of *Shackelford*: "this circuit has held that where there is a close timing between an employee's protected activity and an adverse employment action, the employer must offer a legitimate, nondiscriminatory reason that explains both the adverse action and the timing." *Id.* at 408 (internal quotations and citations omitted).

8

n. 2. "A constructive discharge has occurred when an employee resigns after 'the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign.'" *Id.* at *18 (quoting *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994)).

> In determining whether a reasonable employee would feel compelled to resign, [courts] have considered the relevancy of the following events:
>
> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status] . . . .

*Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001).

Ranel asserts the following adverse actions during the two months after he complained of sexual harassment:

- Johnson, the store manager, yelled at him for inquiring as to the status of the internal investigation and told him that she would not give him any information regarding the investigation, that the alleged incidents were "all over town and the store," and that she "[did] not need this."

- Thomas, the district manager, told him that "it's best that you don't come back to this store. You go to the Winnsboro store"; that Thomas kept insisting that he transfer; and that Thomas told him that the female employees at the Rayville McDonald's would "team up" against him if he returned.

As a result of these actions[4], Ranel asserts that he felt compelled to resign and look for other work.

Gilley argues that a reasonable person in Ranel's position would not have felt compelled to resign. Gilley has offered evidence that Johnson and Thomas urged Ranel to return to work, that Thomas merely suggested that Ranel transfer to the Winnsboro store, and that Thomas was

---

[4]Ranel cannot rely on his claim of workplace harassment: "to succeed on a constructive discharge claim, the plaintiff must show a greater degree of harassment than is required for a hostile work environment claim." *Hockman v. Westward Commc'ns., LLC*, 407 F.3d 317, 332 (5th Cir. 2004).

9

considering Ranel for a promotion to store manager at the Winnsboro store. Gilley also argues that Ranel is precluded from proving a constructive discharge claim because he quit without waiting to see if Gilley's remedial actions were effective. *See Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 481 (5th Cir. 2008) ("In the constructive discharge context, we have recognized that part of an employee's obligation to be reasonable is an obligation not to assume the worst, and not to jump to conclusions too fast.") (internal quotations and citations omitted).

The Court finds that Johnson's comments to Ranel and Thomas's comments regarding the hostility of the female employees fail to "render the harassment so intolerable that a reasonable employee would feel compelled to resign." *Harvill*, 433 F.3d at 440 (holding that rude behavior failed to support a constructive discharge claim).

The Court also finds that Thomas's suggestion or insistence that Ranel transfer was not "such an intolerable condition that a reasonable person would have felt compelled to resign." *EEOC v. Omni Hotels Mgmt. Corp.*, 516 F. Supp. 2d 678, 700 (N.D. Tex. 2007). Ranel appears to argue that he was given two equally undesirable options: return to work at the Rayville McDonald's, where the alleged harassers were still employed, or accept a transfer to another store in a town that he did not live in. Ranel testified that he did not want to go to the Winnsboro store, which was approximately 20 miles away. However, Thomas testified that he gave Ranel the option of transferring to several other stores, including a store that was apparently close to Ranel's other home in Monroe. [Doc. No. 45-2, Exh. B, 65–66]; *see also* [Doc. No. 40-2, Exh. B, 222:1–9 (Ranel testified that Thomas did not offer him any other option of remedying his complaints other than transferring him to a store in another town that Ranel did not live in.)]. A transfer to a store outside Rayville may have been less convenient for Ranel. However, "constructive discharge cannot be based upon the employee's

subjective preference for one position over another." *Jett v. Dallas Indep. Sch. Dist.*, 798 F. 2d 748, 755 (5th Cir. 1986) (citation omitted); *see also Elsik v. Regency Nursing Ctr. Ptnrs. of Kingsville, LTD.*, V-06-41, 2007 U.S. Dist. LEXIS 61656, at *20 (S.D. Tex. Aug. 22, 2007) (holding that a lateral transfer to a facility that was further from the plaintiff's home and would require her to relocate, primarily at her own expense, failed to support a constructive discharge claim). Ranel has not shown any other aggravating factors, such as a reduction in pay, position, or duties. Under these circumstances, the Court finds that Ranel has failed to show that he was constructively discharged.

Gilley's Motion for Summary Judgment on this claim is GRANTED.[5]

### D. State Law Claims

#### 1. Intentional Infliction of Emotional Distress

Gilley moves for summary judgment on Ranel's state law claims under LA. CIV. CODE art. 2315 for the tort of intentional infliction of emotional distress.

> An emotional distress claim under Louisiana law requires that the plaintiff establish three elements: (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that such distress would be substantially certain to result from the conduct. Louisiana courts, like courts in other states, have set a very high threshold on conduct sufficient to sustain an emotional distress claim, and the Louisiana Supreme Court has noted that 'courts require truly outrageous conduct before allowing a claim . . . even to be presented to a jury.'

*Morris v. Dillard Dep't Stores*, 277 F.3d 743, 756 (5th Cir. 2001) (quoting *Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1024-25 (La. 2000) (citing *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La.

---

[5]In light of the foregoing conclusion, the Court need not reach Gilley's argument that Ranel is procedurally barred from pursuing his retaliation claim because he did not allege in his EEOC charge that he was constructively discharged in retaliation for complaining of sexual harassment. *See Pacheco v. Mineta*, 448 F.3d 783, 788 n. 7 (5th Cir. 2006) (noting the split of authority in the Fifth Circuit regarding whether exhaustion implicates subject matter jurisdiction or is merely a prerequisite to filing suit).

1991)).

> Although recognizing a cause of action for intentional infliction of emotional distress in a workplace setting, [Louisiana's] jurisprudence has limited the cause of action to cases which involve a pattern of deliberate, repeated harassment over a period of time. The distress suffered by the employee must be more than a reasonable person could be expected to endure. Moreover, the employer's conduct must be intended or calculated to cause severe emotional distress, not just some lesser degree of fright, humiliation, embarrassment or worry.

*Nicholas*, 765 So. 2d at 1026–27 (citations omitted).

> Ranel's theory of liability is somewhat muddled:
>
> Ranel testified at his deposition that he felt compelled to pray after one of the incidents in question, that he was put in the uncomfortable and frustrating position of working the same shift with his harassers directly after the incidents in question, that he was yelled at by his store manager when he called to check on the status of the company's investigation, and eventually had to file an EEOC charge and look for other work after not being told the status of his complaint and being told by Thomas that the transfer of Ranel to a store in another town was his solution to the harassment problem at the Rayville McDonald's. It was not necessary that harassment be allowed to continue to escalate to the point of causing a breakdown, as Ranel was not required to take the abuse. Further, given the pervasive nature of the harassment at the Rayville McDonald's and Johnson's ineffective handling of same prior to the incidents involving Robinson and McFarland, Gilley Enterprises should have know that such tort damages where likely to be incurred by one of its employees.

[Doc. No. 40, p. 30].

Gilley argues generally that it cannot be held vicariously liable for the actions of Robinson and McFarland, the alleged harassers. Gilley also argues that Ranel has failed to prove that he was subjected to "extreme and outrageous conduct," that he suffered severe emotional distress, or that Gilley intended to inflict severe emotional distress upon him.

The Court finds that Ranel has failed to show that Gilley's conduct "was extreme and outrageous." First, the harassers' conduct cannot be imputed to Gilley. In order for an employer to

be vicariously liable for the tortious acts of its employee, "the tortious conduct of the [employee must be] so closely connected in time, place, and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests." *LeBrane v. Lewis*, 292 So. 2d 216, 218 (La. 1974). Ranel has offered no evidence that the harassers' tortious conduct was primarily rooted in or incidental to the performance of their duties. *Cf. id.* ("The dispute which erupted into violence was primarily employment-rooted. The fight was reasonably incidental to the performance of the supervisor's duties in connection with firing the recalcitrant employee and causing him to leave the place of employment.").

Next, turning to the actions of Gilley for which Gilley is likely vicariously liable, the Court finds that Johnson's "ineffective handling of" allegations of workplace harassment prior to the incidents involving Ranel fails, as a matter of law, to rise to the "very high threshold on conduct sufficient to sustain an emotional distress claim." *Morris v*, 277 F.3d at 756; *see also Hatley v. Hilton Hotels Corp.*, 308 F.3d 473, 476 (5th Cir. 2002) (holding that the employer's negligent response to the plaintiff's complaints failed to meet Mississippi's standard of wanton and wilful conduct evoking outrage or revulsion). Similarly, the actions following the alleged harassment of Ranel fail to meet this high threshold. Ranel concedes that he was forced to work with the alleged harassers following the incidents because Johnson, the store manager, was out of town, and he did not see Thomas until a few days after the incidents. Once Thomas and Johnson were both aware of the incidents, within a few days, they suspended the alleged harassers pending an investigation. Their failure to act more expeditiously is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly

intolerable in a civilized community." *White*, 585 So.2d at 1209. Johnson's and Thomas's comments to Ranel following the alleged harassment, while possibly rude and insensitive, are similarly insufficient. *See id.* ("Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."). Although the transfer may have been upsetting to Ranel, Thomas's insistence that Ranel transfer fails to rise to the level of extreme and outrageous behavior as that standard has been articulated by Louisiana courts.

Gilley's Motion for Summary Judgment on this claim is GRANTED.

### 2. Harassment and Retaliation

In the Complaint, Ranel also asserts harassment and retaliation claims under the Louisiana Employment Discrimination Law ("LEDL"), LA. REV. STAT. § 23:301, *et seq*. The Court's analysis of Ranel's claims under the LEDL is the same as its analysis of Ranel's claims under Title VII. *See La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 477 (5th Cir. 2002). Therefore, Gilley's Motion for Summary Judgment on these claims is GRANTED, for the previously cited reasons.

## III. CONCLUSION

For the foregoing reasons, Gilley's Motion for Summary Judgment [Doc. No. 32] is GRANTED, and Ranel's claims are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this **8** day of May, 2009.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE